**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JERMAINE MCGINNIS,

                      Plaintiff,

    - v -                                  Civ. No. 9:13-CV-1538
                                              (LEK/DJS)

JONATHAN D. CRISSELL, *et al.*,

                      Defendants.

**APPEARANCES:**                                     **OF COUNSEL:**

MCCABE, MACK LAW FIRM                TRISTAN SMITH, ESQ.[1]
*Pro Bono Attorney for Plaintiff*
P.O. Box 509
63 Washington Street
Poughkeepsie, NY 12602-0509

BROOME COUNTY ATTORNEY'S OFFICE    ROBERT G. BEHNKE, ESQ.
*Attorney for the Broome County Defendants*
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, NY 13902-1766

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

This matter is presently before the Court for a decision after an exhaustion hearing which was held on February 8, 2018. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011). For the reasons that follow, the Court recommends that all claims against the Broome County

---

[1] *Pro Bono* counsel was appointed solely for the purposes of the exhaustion hearing. Dkt. No. 279.

Defendants[2] be dismissed due to Plaintiff's failure to exhaust his available administrative remedies.

## I. PROCEDURAL HISTORY

On November 25, 2013, *pro se* Plaintiff Jermaine McGinnis commenced this action pursuant to 42 U.S.C. § 1983. Dkt. No. 1, Compl. Because Plaintiff was proceeding *pro se*, his Complaint was subject to an initial review. During that process, Plaintiff repeatedly sought to amend his Complaint. Dkt. Nos. 20 & 30. The most recent accepted filing is the Third Amended Complaint, which is now the operative pleading. Dkt. Nos. 58 & 67. Defendants answered on April 18 and August 16, 2017. Dkt. Nos. 221 & 239.

The Third Amended Complaint presently asserts two claims: (1) an excessive force claim against Defendants Crissell, Stephens, and Valls, and (2) a deliberate medical indifference claim against Defendant Stephens and (the unserved) Nurse Vandergriek. Insofar as it is necessary to set forth the allegations of the parties for purposes of this exhaustion hearing decision, I quote from this Court's April 18, 2018 Report-Recommendation:

> In September 2011, Plaintiff was in custody at the Broome County Correctional Facility. Third Am. Compl., "Statement of Claim" at ¶¶ 1 & 3. On September 15, 2011, Defendants Crissell and Stephens were involved in escorting Plaintiff from his cell to the medical unit. *Id.* at ¶ 5; Dkt No. 245-4, Affidavit of Philips Stephens ("Stephens Aff'd"), ¶ 2; Dkt. No. 245-5, Affidavit of Jonathan Crissell ("Crissell Aff'd"), ¶ 4. Beyond these basic facts, the remaining relevant facts are disputed by the parties. Plaintiff claims that

---

[2] The "Broome County Defendants" include Correction Officers Jonathan Crissell, Adam Valls, and Phillip Stephens. Defendant Nurse Karen Vandergriek has never been served with process in this case.

> Defendant Valls was also part of this escort, but Defendants deny this claim. Dkt. No. 265 at ¶¶ 3 & 6; Stephens Aff'd at ¶ 5; Crissell Aff'd at ¶ 5; Dkt. No. 245-7, Affidavit of Adam Valls ("Valls Aff'd"), ¶ 3. Plaintiff alleges that during the escort Defendants Crissell, Stephens, and Valls physically assaulted him while making reference to the publicized crime for which he was incarcerated. Third Am. Compl., ¶¶ 8, 11-19; Dkt. 248, p. 7. He alleges that he was severely injured during the assault and upon being brought to the medical unit he was denied medical treatment. Dkt. 265, ¶ 9. Defendants contend that the escort was uneventful and involved no use of force. Stephens Aff'd at ¶ 3; Crissell Aff'd at ¶ 4. The provided medical records show that upon arriving at the medical unit Plaintiff had no obvious signs of injury. *See* Dkt. No. 247.

Dkt. No. 268 at pp. 2-3.

Each of the Broome County Defendants raised the affirmative defense that Plaintiff failed to exhaust his administrative remedies in their Answers to the Third Amended Complaint. Dkt. No. 221 at ¶ 26; Dkt. No. 239 at ¶ 26. In this Court's April 18, 2018 Report-Recommendation, it was proposed that a hearing be held in order to expeditiously address this potentially dispositive issue. Dkt. No. 268 at pp. 8-9. The District Court adopted the Report-Recommendation in its entirety on August 20, 2018. Dkt. No. 274, Decision and Order. This Court then held an exhaustion hearing on February 8, 2019, for which Plaintiff was appointed *pro bono* counsel. Dkt. Nos. 279 & 289. At the hearing, Major Mark Smolinsky and Lt. William Brown testified on behalf of the Defendants regarding Broome County's grievance procedure and whether any grievances were filed by Plaintiff, and Plaintiff testified on his own behalf. Dkt. No. 291, Hearing Transcript "Tr." at pp. 1-57. Exhibits were introduced. *Id.* The parties then submitted post-hearing briefing on March 14, 2019. Dkt. Nos. 295 & 296.

## II. DISCUSSION

### A. Exhaustion

*1. Legal Standard*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "The exhaustion inquiry thus requires [a court to] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

A prisoner's failure to exhaust administrative remedies may nonetheless be excused

if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Supreme Court has provided three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.[3]

The Second Circuit has ruled that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d at 308-10. The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999). However, once a defendant has produced reliable evidence that such remedies were available to the plaintiff

---

[3] The Second Circuit previously set forth a three-part inquiry for when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable. *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013). "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it." *Id.*

*2. The Exhaustion Hearing*

As previously noted, a one day Exhaustion Hearing was held in this matter on February 8, 2019. Several Exhibits were admitted at the Exhaustion Hearing. Those Exhibits are as follow:

Defendants' Exhibit A - Grievance Procedure dated January 8, 2016.

Defendants' Exhibit B - Broome County Safety System Inmate Possessions Listing for Inmate Jermaine J. McGinnis.

Defendants' Exhibit C - Listing of Grievances filed in September of 2011.

Defendants' Exhibit D - Voluntary Statement of Jermaine J. McGinnis, dated December 23, 2011.

Defendants' Exhibit F - Broome County Public Safety System Housing History Report relating to Jermaine J. McGinnis.

Plaintiff's Exhibit 1 - New York State Freedom of Information Request dated October 16, 2013.

Plaintiff's Exhibit 2 - Broome County Sheriff's Correctional Division Policy Statement Regarding Inmate Grievances.

With regard to witness testimony at the hearing, Major Mark Smolinsky testified

regarding Broome County's grievance procedure in effect at the Jail at the time of the acts referenced in Plaintiff's Third Amended Complaint. Tr. at pp. 3-10. Major Smolinsky noted that he has been the Jail Administrator since 2004. Tr. at pp. 4-5. The Jail has a formal grievance procedure that is provided to all inmates. Tr. at pp. 5-6; Exhibit A. That procedure, among other things, requires that an inmate file a grievance within five days of the event in order for the grievance to be timely. Tr. at pp. 7; Exhibit A.

Major Smolinsky reviewed the records of the jail with regard to any grievance filed by Plaintiff. He first noted that Plaintiff's Possession Listing Form indicates that Plaintiff was provided with the Inmate Handbook which contained the grievance procedure. Tr. at p. 6; Exhibit B. Major Smolinsky also testified that Plaintiff never filed a grievance with him, nor was an appeal of any grievance denial ever made to him by the Plaintiff. Tr. at pp. 7-8. This is significant because, as noted above, the Major was the Jail Administrator during this period of time, and was therefore part of any appeal process. *See* Exhibit 2, ¶ 6(c).

Lt. William "Bill" Brown then testified regarding his knowledge of events relating to the issue of Plaintiff's attempts to file grievances at the jail. He testified that he is a 27 year veteran of the Broome County Corrections, and in 2011 he was the Grievance Officer for the Jail. Tr. at pp. 11-12. Lt. Brown generally testified as to the grievance procedure. Initially, if he received a complaint he would attempt to resolve it informally with the inmate. Tr. at p. 12. If the inmate nevertheless wanted a grievance form to file, he would personally provide it to the inmate. Tr. at p. 12. Lt. Brown testified that Plaintiff never asked him for

a grievance form, either at his housing pod or when he was in the medical unit. Tr. at p. 13.

Lt. Brown further noted that a printout of all the grievances at the Broome County Jail for September 2011 fails to list any grievance submitted by Plaintiff. Tr. at pp. 13 & 22; Exhibit C. Contrary to Plaintiff's allegations, Lt. Brown testified that he never threatened Plaintiff regarding the filing of a grievance. Tr. at p. 14.

Plaintiff Jermaine McGinnis then took the stand and testified generally regarding his stay at the Broome County Jail starting in July 2011, and regarding the events that make up his federal Complaint. Tr. at pp. 25-28. After the alleged assault, Plaintiff was housed in the medical unit for a period of time. Tr. at p. 28. At some later point, according to Plaintiff, he was moved to what is known as the multi-pod, or the multi-use pod, and while there he requested to file a grievance on two separate occasions. Tr. at pp. 29-30. According to Plaintiff, the first time he requested a grievance form he was provided one by a Corrections Officer other than Bill Brown. Tr. at pp. 29-30. He filled it out and it was presumably mailed out, but Plaintiff kept no copy. Tr at pp. 30-31. Asked repeatedly at the hearing, Plaintiff was unwavering in his testimony that the first time he filed a grievance was when he was placed in the multi-pod or multi-use unit, and that it occurred several days *after* that move. Tr. at pp. 29, 48.

According to Plaintiff, three to five days after he had filled out and mailed his grievance, he was then seen by Lt. Brown. Tr. at pp. 30, 47. He claims that at that time Bill Brown filled out a second grievance form on his behalf, and Plaintiff then signed it. Tr. at

p. 31. Thereafter, Plaintiff maintains that Lt. Brown came to Plaintiff's housing pod and ripped up his grievance in front of him. Tr. at pp. 31-32. Shortly thereafter, Plaintiff was visited by Defendant Crissell who allegedly intimidated him, and told him that no one would believe him. Tr. at p. 32. Plaintiff did not testify that he took any further action with regard to the grievance process, including filing any appeals. *See* Tr. at pp. 24-49. However, approximately two years later Plaintiff did make a request under New York State's Freedom of Information Law seeking a copy of the "grievance" that he made to Lt. Brown. Tr. 33-34; Exhibit 1.

During his testimony, Plaintiff was shown a signed voluntary statement in his name which was provided to, and apparently typed by, Lt. Brown. Exhibit D. That statement is one page in length, and it provides specific and graphic detail with regard to the alleged assault on September 15, 2011, including identifying Corrections Officer Crissell and providing a description of the nurse who allegedly failed to treat him on the day of the incident and for several days thereafter. *Id.* Plaintiff acknowledged that this was his statement, but questioned his signature and disputed the accuracy of the date and time listed on the statement, which is dated December 23, 2011. Tr. at pp. 37-38; Exhibit D. Plaintiff maintained consistently throughout the course of the hearing that the excessive use of force, his denial of medical treatment, his placement in the multi-pod, his filing of the first grievance, and his interactions with Lt. Brown, *all* occurred during the Month of September, 2011. Tr. at pp. 36-37.

Major Smolinsky was then recalled to the stand to go over additional jail records relative to the Plaintiff. He noted that Exhibit D, Plaintiff's statement, was in fact generated on December 23, 2011. Tr. at p. 50. The genesis for the statement was not a grievance filed by Plaintiff, but rather a complaint by Plaintiff's brother to the Commission of Corrections, which then contacted the jail and asked that an investigation be conducted. Tr. at p. 50. In addition, the Major noted that when an individual is moved within the confines of the Broome County Jail, a computer tracks that movement and creates a record or log. Tr. at pp. 53-54; Exhibit F. Relative to Plaintiff McGinnis, that log shows that he was housed in the medical unit from September 15, 2011 to September 20, 2011. Tr. at p. 51; Exhibit F. At that point he was transferred to the D pod and then on the same day, he was transferred to the A pod, where he stayed until October 22, 2011. Tr. at pp. 51-52; Exhibit F. Plaintiff was then returned to medical for two days. Tr. at p. 52; Exhibit F. It was only then, on October 24, 2011, that the Plaintiff was housed at the multi-pod. Tr. at p. 52; Exhibit F. He stayed in the multi-pod until December 23, 2011. Exhibit F. With that testimony, the hearing concluded.

### 3. Analysis

Defendants have the burden of establishing that the grievance process was available to Plaintiff and that he failed to utilize it. The Court finds that this burden has been met. The weight of the evidence establishes that there was an adequate grievance procedure in place at the Broome County Jail; that Plaintiff's complaints regarding the assault upon him and his

denial of medical care were grievable issues under the procedure; and that Plaintiff, as evidenced by Broome County's records and by Plaintiff's own statements at the hearing, never filed a timely grievance, or exhausted the appeal process. In particular, the documentary evidence produced at trial establishes that the Jail had a grievance policy in place during Plaintiff's stay, and that policy was in accordance with the law and conformed to the minimum standards of New York State Corrections Law. *See* Exhibits A & 2; N.Y. Comp. Codes R. & Regs. tit. 9, § 7032. That policy specifically provided for a five day limitation on the filing of a grievance. Exhibit A at p. 29; Exhibit 2 at p. 2; N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4 ("An inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance.").

The undisputed evidence was that the assault on Plaintiff is said to have occurred on September 15, 2011. Therefore, a timely grievance would have had to have been filed by September 20, 2011. Plaintiff acknowledges through his own testimony that he did not file any grievance in connection with that assault, or for the lack of medical care, in the days following the incident until he was relocated to the multi-pod unit, and in fact waited several days after that to do so. Tr. at pp. 29-30, 36-37, 43, 48. The documentary and credible evidence establishes that his placement in the multi-pod unit did not in fact occur until October 24, 2011. Tr. at p. 52, Exhibit F. Accepting these facts, as the Court does, it is clear that Plaintiff did not comply with the procedural requirement that he file a grievance within five days of the incident. At best, over a month passed between the incident and the

purported grievance.

In light of his failure to timely grieve, Plaintiff must therefore identify why the grievance program was unavailable to him and therefore would excuse his failure to exhaust. In support of this claim, Plaintiff notes that he was in the medical ward for the five days after the incident, and that there was no testimony that the grievance officer toured the medical unit during this time.  Dkt. No. 295, Plaintiff's Post-Trial Brief at p. 2.  Therefore, Plaintiff asserts, Defendants have failed in their burden to show that the grievance procedure was actually available to him.

The Court is not persuaded by this argument.  As noted above, it is the Defendants' initial burden to show that the grievance procedure was in place and was not utilized by the Plaintiff in a timely manner.  This has been done.  It is then incumbent upon Plaintiff to identify why, in the absence of a timely grievance, his failure should somehow be excused. There is no evidence in the record of any attempt by Plaintiff to file a timely grievance that was somehow thwarted by the Defendants.  For example, though Plaintiff was in the medical unit for a period of time, he never testified that while in the unit he asked staff to see the Grievance Officer in order to file a grievance.  While Plaintiff does argue that the Grievance Officer did not state that he toured the medical unit, the Grievance Officer's testimony at the hearing was that he checked and that no Corrections Officer in either Plaintiff's housing pod or the medical unit indicated that Mr. McGinnis had ever requested a grievance form in September 2011. Tr. at pp. 12-13.  Even if the Court were to accept that Plaintiff was unable

while in the medical unit to file a grievance, he was then transferred to a different housing pod (A pod) in September, 2011, and there was no testimony by Plaintiff that he attempted to file a grievance while in that housing unit.  A month later, when Plaintiff was transferred to the multi-pod unit, he also did not file a grievance right away.

In a somewhat contradictory argument, Plaintiff now claims that he was effectively prevented from filing any grievance.  Plaintiff's counsel argues that an environment of intimidation existed which resulted in the grievance process being a "dead-end" because of the nature of the charge against the Plaintiff, involving the burning of his children; the denial of medical care; Lt. Brown's assertion that Officer Crissell was his friend; Officer Crissell's statements; and Lt. Brown ripping up his grievance.  Plaintiff's Post-Trial Brief at pp 1-4. I conclude, based on the content of Plaintiff's testimony, the demeanor of the witnesses, and the contradictory writings and claims by Plaintiff himself, that Plaintiff's claims in this regard are simply not credible.  A more credible reading of the evidence presented at the hearing was that after the alleged assault of event on September 15, 2011, Plaintiff wrote to his brother to complain about what occurred.[4]  His brother then contacted the Commission of Corrections, which in turn contacted the Jail to investigate.  The Jail staff, namely Lt. Brown, then approached Plaintiff in late December 2011, a full three months after the event. Plaintiff provided a written statement (which was also not a grievance although Plaintiff apparently

---

[4] This complaint to Plaintiff's family does not constitute a grievance, even where it is later forwarded to facility staff.  The Court notes that in general merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal citations and quotation marks omitted).

thought that it was),[5] which detailed all of the events in question. Exhibit D. Nothing prevented Plaintiff from providing a full accounting of the events, which were duly noted by the Lieutenant in the written statement. *Id.* The Court does not find credible the claim that Lt. Brown thereafter ripped up the signed statement in front of Plaintiff. This claim is belied by three factors. First, Lt. Brown denied doing so, and his testimony on this point was credible. Tr. at pp. 21 & 23. Second, Lt. Brown produced the allegedly destroyed signed statement at the hearing. Exhibit D. Finally, Plaintiff acknowledged that he submitted a FOIL request for the "grievance that [he] never got a copy of from Officer Bill Brown" in October of 2013. Exhibit 1. If the statement had in fact been destroyed in front of him, as Plaintiff now claims, it would make no sense to request that it be re-produced. Further, neither Plaintiff's original nor Amended Complaint allege that Plaintiff's grievance was destroyed by Lt. Brown, and instead Plaintiff maintained that he did utilize the grievance procedure. *See* Compl. & Dkt. No 58, Third Am. Compl.

Considering all of the above, the Court concludes that Plaintiff's claim that Broome County Corrections Staff destroyed his grievance and thwarted Plaintiff from submitting a timely grievance is simply not credible. As a practical matter, even if the Court were to credit the claim that in December, 2011, a written statement was destroyed, this does not excuse the Plaintiff's failure to file a grievance that was due months *before* that date until at least October 24, 2011 when he was transferred to the multi-pod. *Macias v. Zenk*, 495 F.3d

---

[5] *Silvagnoli v. Figueroa*, 2014 WL 4160213, at *7 n.1 (S.D.N.Y. Aug. 19, 2014) (holding that witness statement that was obtained by Lt. at the facility did not constitute a grievance).

37, 45 (2d Cir. 2007) (". . . because Macias alleges that Parker did not threaten him until January 24, 2003, even if Macias can establish that he was threatened, those threats are only relevant to events that occurred after January 4, 2003. Macias could not have been deterred, and defendants should not be estopped, for earlier conduct that did not impact his ability to file a timely grievance"); *Silvagnoli v. Figueroa*, 2014 WL 4160213, at *7 n. 1 (S.D.N.Y. Aug. 19, 2014) (meeting held ten days after incident, and five days after deadline to file grievance, "could not have affected Plaintiff's capacity to properly exhaust."). The Court therefore finds that Plaintiff has not satisfied any of the circumstances that could excuse failing to exhaust under *Ross*, and therefore, his failure to exhaust was not excusable.

For all the foregoing reasons, the Court rules in favor of the Broome County Defendants on their affirmative defense of failure to exhaust.

### 4. Nature of the Dismissal

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87-88 (2d Cir. 2004). However, if a prisoner has failed to exhaust administrative remedies or provide a valid excuse for failure to do so, and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Id.* at 88; *see also Hilbert v. Fischer*, 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (stating that where "the time to both file a grievance and request an exception to the time limit has long expired, and

[the] Plaintiff has not offered any reason for his delay in filing a grievance . . . the claim is dismissed with prejudice."). Because Plaintiff has failed to establish a credible excuse for his failure to exhaust, and the time to grieve has since passed, the Court will recommend the dismissal of all the claims against the Broome County Defendants with prejudice. Further, with regard to any unserved defendant, dismissal with prejudice is also appropriate. *Bryant v. Whitmore*, 2016 WL 7188127, at *2 (N.D.N.Y. Nov. 4, 2016).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Plaintiff's claims against the Broome County Defendants be **DISMISSED** in their entirety, with prejudice, for failure to exhaust available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[6] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  April 26, 2019
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge