UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JERMAINE MCGINNIS,

                        Plaintiff,

    -against-                                   9:13-CV-1538 (LEK/DJS)

JONATHAN CRISSELL, *et al.*,

                        Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Jermaine McGinnis alleges that Jonathan Crissell, Adam Valls, and Phillip Stephens—guards at Broome County Sheriff's Correctional Facility ("BCSCF")—assaulted him without provocation while escorting him to the facility's medical unit. Dkt. No. 58 ("Third Amended Complaint") at 7–9. He also alleges that Stephens and a medical staff member, Carrin Vandegreke, refused to treat his resulting injuries. Id. at 10–11.[1] Crissell, Valls, and Stephens answered those claims and moved for summary judgment, arguing that Plaintiff failed to timely exhaust his administrative remedies by filing a grievance within five days of the alleged incident, as prison policy required. Dkt. No. 245 ("Summary Judgment Motion"); Dkt. No. 245-12 ("BCSCF Inmate Handbook") at 29–30; Ross v. Blake, 136 S. Ct. 1850, 1856–59 (2016) (explaining that the Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available prison grievance procedures before suing staff) (citing 42 U.S.C. § 1997e(a)). Plaintiff countered that he hand-delivered a grievance to inmate grievance officer William Brown, who

---

[1] The Third Amended Complaint asserted other claims, but the Court dismissed them on initial review. Dkt. No. 67 ("February 2015 Order"). Vandegreke has never been served.

ripped it up. Dkt. No. 268 ("April 2018 Report-Recommendation") at 8. Brown denied this. Id.; see also Dkt. No. 253 ("Brown Affidavit") ¶ 3.

"The intentional destruction of an inmate's grievance would constitute the thwarting of an inmate's ability to take advantage of the grievance process and excuse the failure to grieve." Apr. 2018 R&R at 8–9. Therefore, the Honorable Daniel J. Stewart, U.S. Magistrate Judge, recommended that an evidentiary hearing be held to resolve the fact dispute over whether Brown destroyed Plaintiff's grievance and thwarted Plaintiff's attempt to grieve his claims. Id. (citing Messa v. Goord, 652 F.3d 305, 308–10 (2d Cir. 2011) (holding that a judge may decide whether a prisoner exhausted administrative remedies; a jury trial is not required)). The Court so ordered. Dkt. No. 274 ("August 2018 Order").

The Magistrate Judge held that hearing. Dkt. No. 291 ("Hearing Transcript"). After hearing testimony and receiving the parties' post-hearing briefs, the Magistrate Judge issued another report-recommendation. Dkt. Nos. 295 ("Plaintiff's Letter Brief"), 296 ("Defendants' Letter Brief"), 297 (the "Report-Recommendation"). At the hearing, Plaintiff asserted that BCSCF staff made the facility's grievance procedure "unavailable" to him through an "environment of intimidation:" guards sought to punish him for his criminal offenses, he was beat up and denied medical care, and Brown chastised him for filing a grievance against Brown's "friend," Crissell, and ripped up one of Plaintiff's two grievances. Id. at 12–15. However, the Magistrate Judge believed Brown's testimony that Plaintiff never asked him for a grievance form, that Brown never discussed his friendship with Crissell with Plaintiff, and that Brown never ripped up Plaintiff's grievance. Id. Finding that Plaintiff unjustifiably failed to invoke

2

BCSCF's grievance procedures, the Magistrate Judge recommended dismissal. Id. at 16. Plaintiff objects. Dkt. No. 298 ("Objection").

For the reasons that follow, the Court now adopts the Report-Recommendation and dismisses this case.

## II. LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636. "Under the de novo determination standard, a district judge" need not hold new hearing and "is entitled to give a magistrate judge's findings of fact and credibility determinations 'such weight as [their] merit commands and the sound discretion of the judge warrants.'" Jackson v. City of New York, No. 14-CV-5755, 2015 WL 5698535, at *2 (S.D.N.Y. Sept. 28, 2015) (quoting United States v. Raddatz, 477 U.S. 667, 676 (1980)).

## III. DISCUSSION

Plaintiff contends that he filed two grievances. Hr'g Tr. at 29–30. He maintains that he filed his first grievance shortly after the assault, in September 2011, within the few days after being released from the medical unit, when the unnamed correctional officer gave him a grievance form. Obj. at 7, 13–14. The Magistrate Judge, however, disbelieved Plaintiff's testimony that he filed a timely grievance. R&R at 11–12. The Court agrees for three main

3

reasons. First, Plaintiff's Third Amended Complaint only mentions two purported grievances: (1) a written statement he gave to Brown, which was produced at the hearing and is dated December 23, 2011, Defs.' Ex. D;[2] and (2) a *subsequent* letter to Sheriff Dave Harder (neither of which were timely or proper grievances, see R&R at nn. 4 & 5), Am. Compl. at 12, 14. Until the hearing, Plaintiff did not mention filing any initial grievance filed before he spoke to Brown. Id. Second, the excerpt from the BCSCF grievance log submitted by Defendants does not reflect any grievance filed by Plaintiff in September 2011. Defs.' Ex. C; see also Hr'g Tr. at 13–14. Third, Plaintiff has consistently testified that he filed his first grievance while in the multi-use pod, Hr'g Tr. at 46—but according to his housing history report, he was not transferred there until October 24, 2011, a month after he left the medical unit. Defs.' Ex. F. Therefore, even if he did file a grievance before speaking to Brown, it was over a month late. Accord R&R at 11–12.

Plaintiff objects that the grievance log, Defs.' Ex. C, and the housing history report, Defs. Ex. F, were fabricated. Obj. at 11. However, he does not offer any evidence to support these contentions. Brown testified that it was possible for him to manipulate the grievance log, but nothing suggests he did so. Hr'g Tr. at 19. Mark Smolinsky, the jail administrator, testified that the notations in the housing history report, Exhibit F, were "automatically generated within the computer software system" that "tracks" prisoners when they are moved between cells. Hr'g Tr.

---

[2] Plaintiff asserts that he gave the statement to Brown in September. Hr'g Tr. at 38. However, the statement is dated December 23. Defs.' Ex. D. Plaintiff testified that he made the grievance in the multi-pod, to which he was not transferred until October 24, Defs.' Ex. F. And Smolinski testified that Plaintiff's brother's letter of complaint, which was forwarded to Smolinski and others, prompted Brown to take the statement on December 23. Hr'g Tr. at 50. Thus, the Court agrees with the Magistrate Judge that it is more likely than not that the December 23 date on the statement is correct. See R&R at 13–14.

4

at 53–54. He testified that it is not possible for a county employee "to change anything in the log." Id. That testimony went unchallenged by Plaintiff. Id.

Plaintiff also maintains that BCSCF officials engaged in intimidation and obstruction that should excuse his failure to timely file a grievance. He argues that the Magistrate Judge should have believed his testimony that Brown warned Plaintiff not to file a grievance against Brown's "friend," Crissell, and destroyed the second grievance Plaintiff did file. Obj. at 3. Plaintiff asserts that the Magistrate ignored or "overlooked" evidence that Brown was motivated to protect Crissell. Id. at 3–8. For example, Brown testified he had been friends with Crissell for more than twenty years. Id. at 3; see also Hr'g Tr. at 14. Plaintiff also suggests that Brown has it out for Plaintiff because he is Black and because of the crime with which Plaintiff was charged. Obj. at 3.[3]

However, Plaintiff's counsel raised these points in his post-hearing letter brief, and the Magistrate Judge considered them. See R&R at 13 ("Plaintiff's counsel argues that an environment of intimidation existed which resulted in the grievance process being a 'dead-end' because of the nature of the charge against the Plaintiff, involving the burning of his children; the denial of medical care; Lt. Brown's assertion that Officer Crissell was his friend; Officer Crissell's statements; and Lt. Brown ripping up his grievance."). Even considering those arguments and the evidence offered to support them, the Magistrate Judge still found Brown more credible than Plaintiff and found that BCSCF officials did not thwart Plaintiff's grievances.

---

[3] Plaintiff was accused of burning his children with hot water, which he testified he did while attempting to wash their hands under the influence of drugs. Hr'g Tr. at 25. He testified that guards called him a "baby burner" and that this reputation motivated Defendants' assault. Id. at 26–27.

5

The Court agrees with the Magistrate Judge's cogent analysis and finds that BCSCF officials never prevented Plaintiff from filing a grievance. See R&R at 12–15. Plaintiff's testimony that he saw Brown "rip up" his grievance, Hr'g Tr. at 31, is not credible. Plaintiff testified that Brown destroyed his second grievance: his December, 23 2011 written statement. Hr'g Tr. at 31. However, Defendants produced that statement in the hearing as Exhibit D. R&R at 14. Plaintiff never alleged it was destroyed until recently; in his Third Amended Complaint, he discussed making the statement to Brown, but did not suggest that Brown tore it up. Third Am. Compl. at 12, 14. Even if Plaintiff's December 23, 2011 statement was a proper grievance (the Magistrate concluded it was not, R&R at 13–14 & n.5), it was three months late.

The other excuses Plaintiff offers do not justify his failure to exhaust. Plaintiff asserts that he was in the medical unit "under suicide watch" in the five days after the assault and was not allowed pens, paper, or any other way to access the grievance process. Obj. at 5, 19. But Plaintiff did not testify to these alleged restrictions at the hearing, and even if he had, they would not explain his failure to file a grievance in the days after being released from the medical unit, when he could have requested an extension of the five-day filing deadline. R&R at 11–12; see also Adams v. O'Hara, No. 16-CV-527, 2019 WL 652409, at *2 (N.D.N.Y. Feb. 15, 2019) ("[I]f an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's [Inmate Grievance Program] Supervisor for an exception to the time limit based on mitigating circumstances."). Plaintiff also alleges that Crissell threatened him after he file his second grievance, the December 23, 2011 statement to Brown. Hr'g Tr. at 32. But of course, threats in December could not have deterred Plaintiff from filing a grievance in September, before those threats were made. See Macias v. Zenk, 495 F.3d

6

37, 45 (2d Cir. 2007) (holding that threats weeks after the incident could not have deterred prisoner's grievance).

Finally, throughout his Objections, Plaintiff asserts that the Magistrate Judge was "biased" against him. Obj. at 1, 5–7. However, Plaintiff gives no reason to believe the Magistrate Judge was anything but fair and impartial—aside from Plaintiff's mistaken belief that he overlooked favorable evidence and believed the wrong witnesses. Id. "Judicial rulings alone," based on the evidence and testimony presented in court, "almost never constitute a valid basis [to infer improper] bias or partiality." Liteky v. United States, 510 U.S. 540, 555 (1994). This case is no exception. Rather, the Report-Recommendation is thoughtful, thorough, and well-reasoned.

Having considered all of Plaintiff's Objections and reviewed the entire Hearing Transcript and Exhibits, the Court agrees with the Magistrate Judge's finding that Plaintiff failed to properly invoke BCSCF's available grievance procedures and, therefore, cannot maintain his claims at trial. See Adams, 2019 WL 652409, at *2 (dismissing case for failure to exhaust because plaintiff's testimony that guards threatened him and ripped up his grievance, making the process unavailable, was not credible). The PLRA's exhaustion requirements can have harsh and potentially unfair consequences, shutting the courthouse door to victims of abuse who miss prisons' tight filing deadlines. Plaintiff testified that he is one such victim. Hr'g Tr. at 27–28. However, the Court has no discretion to waive those requirements. Ross, 136 S. Ct. at 1857. As Plaintiff failed to exhaust his administrative remedies, his claims must be dismissed.

IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 297) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that this case is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  July 18, 2019
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge